UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge S. Kato Crews

Civil Action No. 19-cv-03009-CMA-SKC

IBOLYA RADULESCU, individually and on behalf of all others similarly situated,

   Plaintiff,

v.

THE WESTERN UNION COMPANY, and
WESTERN UNION FINANCIAL SERVICES, INC.,

   Defendants.

**ORDER DENYING PLAINTIFF'S MOTION TO COMPEL [#56]**

Plaintiff seeks to certify a class of Western Union customers who sent money transfers from the United States and who were not notified within 60 days that their money transfer was not redeemed, as required by a settlement agreement in a prior class action, *Tennille v. Western Union*, 1:09-cv-00938-JLK (D. Colo. 2009). The *Tennille* settlement applied to a class of customers who sent unredeemed money transfers on or before January 3, 2013. In accordance with the settlement, Western Union began issuing *Tennille* Notifications to its customers *automatically* starting July 1, 2013. This time gap—from January 3, 2013, to July 1, 2013—was not included in the *Tennille* settlement and resulted in over 175,000 customers who sent unredeemed money transfers using Western Union and who were not sent a

notification within 60 days of the funds remaining unredeemed. Plaintiff contends these 175,000 customers (or customer transactions) are "undisputedly part of the case."

Plaintiff's Motion to Compel seeks to compel discovery from the Western Union Defendants (collectively, "Western Union") for post-July 1, 2013 customer transactions. Plaintiff argues: "It cannot be denied that post-July 1, 2013 transactions are highly relevant to Plaintiff's case. Moreover, it cannot be denied that post-July 2013 customers to whom no notification was sent within 60 days after their money transfers were not redeemed *are, by definition, members of Plaintiff's putative class.*" [#56, p.2) (emphasis in original).] Western Union argues the opposite: "Because all U.S. senders who sent an unredeemed money transfer after July 1, 2013, were automatically sent a notification that their money transfer was unredeemed after 60 days, by definition, they cannot be members of the putative class in this case." [#58, p.2.] According to Plaintiff: "The issue in dispute and what is being sought by this motion is evidence whether after July 1, 2013, Western Union did in fact send notification to all customers whose transactions were not redeemed within 60 days. Having a policy is one thing; carrying out that policy is quite another. It is this latter component of [Western Union's] obligation about which Plaintiff seeks discovery." [#56, p.2.]

District Judge Arguello referred the Motion to the magistrate judge. [#57.] The Court held a hearing on the Motion on December 2, 2020. [#61.] At that time, the

Court ruled on the portion of the parties' dispute over training videos and took the remainder under advisement. [#63.] The Court then issued the following Minute Order at #64:

> MINUTE ORDER re: 56 MOTION to Compel *Discovery and Extension of Time for Class Certification Discovery* filed by Ibolya Radulescu. Yesterday, December 2, 2020, the Court held oral argument on Plaintiffs Motion to Compel Discovery and Extension of Time for Class Certification Discovery (Motion), which was referred to the magistrate judge. The Court will stay ruling on the Motion pending the following: (1) Plaintiff is **ORDERED** to provide the names of the six to ten customers it identified through its social media search to Defendants **by no later than December 10, 2020**; (2) Defendants are **ORDERED** to investigate those names to determine whether a *Tennille* Notice was ever sent to each individual, and shall inform Plaintiff and the Court of the results of that search **by no later than December 21, 2020**; (3) Defendants are **FURTHER ORDERED** to determine whether they maintain logs or data of customers who contacted Defendants to complain about unredeemed funds (after the 60-day period but before the escheat period), and shall inform Plaintiff and the Court of the results of that inquiry **by no later than December 10, 2020**. The latter pertains to the period after July 1, 2013. If Defendants determine they do maintain such data, the update they provide Plaintiff and the Court shall include information concerning the burden, if any, on Defendants to collect that data. SO ORDERED by Magistrate Judge S. Kato Crews on 12-3-2020. Text Only Entry (skclc2). (Entered: 12/03/2020)

The parties then submitted reports and briefing resulting from the above Minute Order. [#65; #66; #73.] The Court held another hearing on the Motion on May 12, 2021, considering the resulting reports and briefing. Having considered the Motion, the related briefing, the subsequent reports and briefing, the arguments of counsel at both hearings, the docket, and applicable law, the Court DENIES the Motion, but extends the deadline for filing the motion for class certification.

## Legal Principles

The scope of discovery in federal court is broad. Rule 26 permits discovery regarding any nonprivileged matter that is relevant to any party's claim or defense,

while the proportional needs of the case serve as guardrails for further reasonably tailoring the scope of discovery. Fed. R. Civ. P. 26(b)(1).

Rule 401 of the Federal Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Fed. R. Evid. 401. When evaluating proportionality, courts consider: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). Nothing in Rule 26(b)(1) requires the court to address all five proportionality factors. *See GSL Grp., Inc. v. Travelers Indem. Co.*, No. 18-CV-00746-MSK-SKC, 2020 WL 4282291, at *11 n.5 (D. Colo. July 24, 2020) ("If the movant is not required to address all the factors, surely the Court is not required to either."). Information within the proper scope of discovery "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

Under Rule 37(a)(1), a party may move for a court order compelling discovery. Fed. R. Civ. P. 37(a)(1). "The party moving to compel discovery must prove that the opposing party's answers are incomplete[,]" and the "party objecting to discovery must establish that the requested discovery does not fall under the scope of relevance as defined in Rule 26(b)(1)." *Tara Woods Ltd. P'ship v. Fannie Mae*, 265 F.R.D 561,

4

566 (D. Colo. 2010). Ultimately, "[t]he administration of the rule[ ] lies necessarily within the province of the trial court with power to fashion such orders [as] may be deemed proper to vouchsafe full discovery for the just, speedy and inexpensive determination of the lawsuit." *Robison v. Transamerica Ins. Co.*, 368 F.2d 37, 39 (10th Cir. 1966).

## Analysis

**1.     Discovery of Post-July 1, 2013 Transactions**

Western Union claims it began to comply with providing the required *Tennille* Notice on July 1, 2013. These notices are sent to customers automatically, and Plaintiff can point to no facts suggesting the contrary, according to Western Union. Therefore, Western Union posits that Plaintiff's discovery requests for all post-July 1, 2013 money transfers and notifications sent to customers whose money went unredeemed is a fishing expedition. [#58, p.2.] Of note, Western Union does not keep a record of customers who were not sent *Tennille* Notification, or of customers who did not receive, or complained about not receiving, notification. This is because its system automatically sends the required notification after the 60-day unredeemed period. Therefore, no data is readily available to Western Union to identify which customers, if any (post-July 1, 2013), were not sent *Tennille* Notification.

Since Western Union does not have this data at the ready, Plaintiff's discovery requests attempt to back into the data that does not exist by seeking production of: (1) all unredeemed transactions after July 1, 2013, and (2) all of those transactions

5

where a notice was sent to compare the two lists to theoretically reveal who was not sent notice. But as the Court understands it, this is a distinction without a distinction because Western Union argues "any person who sent an unredeemed money transfer on or after July 1, 2013 . . . was automatically sent a notification . . . ." [#58, p.4.]

Since this discovery dispute arose, the Court explored with the parties alternative forms of data Western Union might be able to produce to flesh out the identities of customers who were not sent *Tennille* Notification, if any. Those efforts led to dead ends and detailed descriptions of undue burden by Western Union supported by a sworn declaration. [#65-1.] Part of the difficulty with Plaintiff's discovery requests is they involve proof of a negative, *i.e.*, the identities of individuals whom Western Union did not send *Tennille* Notification. Western Union maintains no record of customers not sent *Tennille* Notification, and argues the likelihood of there being customers who were not sent notification is null to minuscule, if at all, since the notices are sent automatically.[1] It also maintains no specific record of customers who claim not to have received *Tennille* Notification.

Plaintiff sent her money transfer during the above-referenced gap period before Western Union begin sending *Tennille* Notifications on July 1, 2013. Through her own efforts using social media, Plaintiff identified 14 individuals who claimed to

---

[1] An important distinction is that *Tennille* did not require customers *receive* the notice. The requirement was for Western Union to *send* notice within 60 days; thus, the fact a customer did not *receive* notice is not necessarily evidence Western Union did not *send* notice.

6

have unredeemed money transfers with Western Union post-July 1, 2013, and who claimed they did not receive *Tennille* Notification. [#66.] After the Court ordered Plaintiff to provide those names to Western Union so it could determine if these individuals were sent a notice, Western Union concluded: (1) for 12 of the 14 names Western Union did not locate records of any money transfers sent from the United States by individuals with those names from July 1, 2013, to the present that were unredeemed for 60 days; (2) for the final two names, Western Union located records of four money transfers sent from the United States by individuals with those names after July 1, 2013, that were unredeemed for more than 60 days—with respect to three of those four money transfers, Western Union's records confirm the sender was sent a notification within 60 days to notify them that the money transfer was unredeemed; with respect to the fourth money transfer, Western Union was unable to confirm whether a notification was sent.[2] [#66.] Plaintiff later discovered an additional individual, Daniel Subkoff, who claims to have sent a money transfer post July 1, 2013 that went unredeemed and without him receiving any notice from Western Union. [#73.] But during a hearing, Western Union stated it searched its databases and confirmed it sent Mr. Subkoff an SMS text notification of the unredeemed funds within the 60-day period.

---

[2] Western Union argues due to the date of the transaction, limited data is available, and the lack of a record confirming that a notification was sent does not suggest its policies and procedures adopted pursuant to the *Tennille* settlement were not working.

7

Thus, only one in 15 (6%, or less depending on the number of money transfers per individual) of the individuals Plaintiff claims to have sent unredeemed money transfers from the United States post-July 1, 2013 arguably fits the purported class. Other than this one example, Plaintiff has no additional evidence to suggest Western Union failed to send *Tennille* Notifications post-July 1, 2013. *See Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1238 (10th Cir. 2000) ("When a plaintiff first pleads its allegations in entirely indefinite terms, without in fact knowing of any specific wrongdoing by the defendant, and then bases massive discovery requests upon those nebulous allegations, in the hope of finding particular evidence of wrongdoing, that plaintiff abuses the judicial process.") As a result, the Court is satisfied that requiring Western Union to research and cross reference various databases and systems over a multi-year period to somehow back into identifying individuals who were not sent a *Tennille* Notification, if any, would be unduly burdensome and expensive, and the burdens and expense outweigh any potential benefit. [*See* #58; #65; #65-1.] *Id.* ("Utilizing its discretionary power under this rule, the district court appropriately recognized that the likely benefit of this attempted fishing expedition was speculative at best."); *Biax Corp. v. Nvidia Corp.*, 271 F.R.D. 200, 210 (D. Colo. 2010) ("After consideration of the cited case law and the parties' factual analyses, the Court believes that without an adequate explanation of the facts and evidence supporting BIAX's stated allegations of indirect infringement and inducement, an order compelling Defendants to produce responsive worldwide sales financial information

would be more akin to the aforementioned fishing expedition."), order clarified, 2010 WL 4879209 (D. Colo. Nov. 23, 2010).

Further, in her Motion, Plaintiff describes the proposed class and sub-class as follows:

> . . . Plaintiff filed this class action to recover for herself and a class of customers whose money transactions were not redeemed *and who were not notified* by Defendants within 60 days. . . . Plaintiff's proposed class/sub-classes defined in the complaint is not limited to a period of time *before* July 1, 2013. Rather, Plaintiff's proposed class/sub-classes includes all Western Union customers, regardless of when they sent their money, *who were not notified* by Defendants their money had not been picked up within 60 days, and who were not part of the *Tennille* settlement.

[#56-1, p.3 (first and third emphases added; second emphasis in original).] During the December 2, 2020 hearing, Plaintiff's counsel confirmed the proposed class involves customers who were *not* sent *Tennille* Notification, and further, those who were sent notification but did not receive it are *not* part of the proposed class.

Based on the proposed class, information concerning post-July 1, 2013 customers whose transactions were unredeemed and who were sent *Tennille* Notification are not relevant to Plaintiff's claims. Thus, Plaintiff's arguments to compel Western Union to produce all transactions for customers who were notified are to no avail. And because Western Union does not maintain a list or data of customers who were not sent notification, there is nothing for the court to compel in this regard. *See Smith v. Pizza Hut, Inc.*, No. 09-CV-01632-CMA-BNB, 2013 WL 1751850, at *3 (D. Colo. Apr. 23, 2013) ("I cannot compel a party to produce that which

9

does not exist."); *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, No. 01–cv–01644–REB–CBS, 2010 WL 502721, at *14 (D. Colo. Feb. 8, 2010) (rule 34 does not require a party to generate non-existent documents).

For these reasons, the Motion to Compel is DENIED.

**2.      Extension of Class Certification Deadlines**

Plaintiff also seeks a 90-day extension of the class certification deadline to complete discovery related to class-certification. Plaintiff seeks to issue subpoenas to Nordis Technologies and RevSpring (vendors used by Western Union for sending notices) regarding who did and did not receive *Tennille* Notifications within the 60-day period. [#56, ¶3.]

The Court denies this request for reasons similar to those stated above. Further, the Court understands Western Union engages these vendors for the specific purpose of providing numerous notices to its customers, including *Tennille* Notifications. It is not logically apparent these vendors would maintain lists or data regarding notices they failed to send when their entire function is to send notices—Plaintiff has not provided evidence or information to suggest these vendors possess information evidencing *Tennille* Notifications they did not send. And to the extent the subpoenas seek other data involving customers who were sent notices, as discussed above, that information is not relevant to Plaintiff's claims or its proposed class or sub-class.

On this record, Plaintiff has failed to demonstrate good cause for extending class certification discovery to subpoena these non-parties. *See Echostar Commc'ns Corp. v. News Corp.*, 180 F.R.D. 391, 394 (D. Colo. 1998) ("Courts are required to balance the needs for discovery against the burdens imposed when parties are ordered to produce information or materials, and the status of a person or entity as a non-party is a factor which weighs against disclosure."); *In re Application of Michael Wilson & Partners*, No. 06-cv-02575-MSK-KMT, 2009 WL 1193874, at *3 (D. Colo. Apr. 30, 2009), aff'd 2011 WL 3608037 (D. Colo. Aug. 16, 2011) ("Discovery from third-parties must, under most circumstances, be closely regulated.")

The Court also is not convinced of Plaintiff's diligence in seeking discovery from these vendors. Although Plaintiff states she only learned of these vendors in September 2020, Western Union offers evidence to suggest these vendors were disclosed and known to her in March 2020. Further, given the months the Court took with the parties to explore the potential forms of data available to back into the data that does not exist (customers who were not sent notification), Plaintiff has not persuaded the Court that these third-party vendors have any relevant data in their possession that already exists; meaning they too would have to produce records in an attempt to back into the data Plaintiff seeks. And since the data that would be relevant does not exist, the foreseeability of the need for additional discovery related to any information obtained by the subpoenas seems inevitable, and the time for class-certification discovery has closed.

The Court does, however, find good cause to extend the deadline for filing Plaintiff's motion for class certification. Plaintiff's motion shall be filed within 30-days of the date of this order.

* * *

It is ORDERED the Motion to Compel is GRANTED IN PART insofar as the Court extends the deadline for the filing of Plaintiff's motion for class certification. It is DENIED in all other respects.

DATED: May 18, 2021

BY THE COURT:

S. Kato Crews
U.S. Magistrate Judge